MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 92
Docket:      Fra-17-502
Argued:      June 12, 2018
Decided:     July 5, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

JOHN FAHNLEY

v.

STATE OF MAINE

JABAR, J.

[¶1]  The State of Maine appeals from a judgment of the trial court (Franklin County, *Mills, J.*) granting John Fahnley's petition for post-conviction review and, pursuant to 15 M.R.S. § 2130 (2017), vacating his conviction of sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2) (2017).  The court found that Fahnley had been deprived of the effective assistance of counsel during his criminal trial.  Because we conclude that the court's factual findings are supported by competent record evidence, we affirm the judgment.

## I. BACKGROUND

[¶2]  The post-conviction court made the following factual findings, which are supported by competent evidence in the record.  *See Middleton v. State*, 2015 ME 164, ¶ 2, 129 A.3d 962.

[¶3]  In 2013, Fahnley was indicted for one count of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(A) (2017), and two counts of sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2).  In 2014, a jury found Fahnley guilty of one count of sexual abuse of a minor and not guilty of the other two counts.  We affirmed Fahnley's conviction in 2015, *State v. Fahnley*, 2015 ME 82, ¶ 1, 119 A.3d 727, after which Fahnley filed a petition for post-conviction review in the Superior Court, alleging that he was deprived of the effective assistance of counsel at trial.  In his petition, Fahnley asserted that he received ineffective assistance because trial counsel (1) failed to present exculpatory evidence, including medical records and credit card records; (2) failed to present witnesses for the defense; and (3) notified him in a letter shortly before trial that certain evidence would be presented, but then failed to present the evidence and failed to discuss that decision with him.

[¶4]  After a hearing, the court granted Fahnley's petition for post-conviction review and vacated the conviction of sexual abuse of a minor

because it found that Fahnley had been deprived of the effective assistance of counsel. In its order, the court made the following findings, all of which are supported by evidence presented at the post-conviction hearing.

[¶5] Fahnley, a musician and photographer, was once in a band with the alleged victim's father. The allegations against Fahnley involved sexual contact with the alleged victim in Fahnley's Maine home. At trial, the alleged victim testified that he, his brother, and Fahnley drove to Fahnley's house in Madrid, Maine, from the alleged victim's family home in western Massachusetts in mid-August of 2008, sometime between August 9th and September 3rd. Fahnley then drove the boys back to Massachusetts, where the alleged victim got into an argument with his mother, so he returned to Maine alone with Fahnley. He testified that it was at this point—when he was alone with Fahnley in Maine during the middle of August of 2008—that the sexual abuse underlying the Class C conviction occurred.

[¶6] During the two years before trial, Fahnley "performed considerable legwork" in the preparation of his case. He obtained his medical and financial records and identified potential witnesses, all of which would have been relevant to establish his whereabouts during August of 2008—the time period that was primarily relevant to the charges against him. In the weeks leading up

4

to trial, Fahnley "became distressed because trial counsel was not doing what [he] had requested" and ultimately engaged the services of another attorney, who was unable to represent Fahnley due to his inexperience in the area of criminal law.

[¶7]  In January of 2014, a few weeks before the trial was set to begin, trial counsel addressed Fahnley's concerns in a letter.  Among other things, trial counsel wrote that he intended to address the alleged victim's inconsistent statements, intended to use Fahnley's medical records, intended to introduce photographs to show that the alleged victim had not been alone in Maine with Fahnley, and intended to introduce Fahnley's credit card billing records to undermine the alleged victim's timeline of events.  He also wrote that he was attempting to speak to Fahnley's doctor in order to determine what potential testimony she could offer on his behalf.

[¶8]  During the alleged victim's testimony at trial, he made statements that significantly contradicted the statements he had made during his initial interview with a Massachusetts detective, when he first reported the abuse in 2011, and those statements he made during a subsequent interview conducted by a Franklin County detective in Maine.  Although trial counsel had concluded that the State's case would be based entirely on the alleged victim's credibility

because of the absence of forensic evidence or witnesses to the alleged abuse, counsel merely refreshed the alleged victim's recollection with the inconsistent statements. Despite the pronounced and substantive disparities between the statements, trial counsel did not attempt to have the prior inconsistent statements read into the record or otherwise admitted in evidence.

[¶9] Trial counsel also listed Fahnley's mother's portfolio manager on the defense's witness list but did not call him to testify at trial. According to the portfolio manager's testimony at the post-conviction proceeding, he told Fahnley that Fahnley's financial support of the alleged victim's family—which had been occurring for years in the range of $2,000 to $4,000 monthly—needed to cease because it was not sustainable. The alleged victim's family was "angry and under financial strain" when Fahnley stopped the payments because the financial support from Fahnley was the family's only source of income. Despite his presence in court on the first day of the trial and his willingness to testify, the portfolio manager was not called to testify at the underlying criminal trial regarding the specifics of Fahnley's financial situation or the impetus for the cessation of financial contributions to the alleged victim's family.

[¶10] Two other witnesses could have presented partial alibis for Fahnley during August of 2008. Neither was listed as a potential witness or

called at trial, but both were available to testify about Fahnley's whereabouts during August of 2008. Although counsel did speak with one of the witnesses, he failed to interview the other. Trial counsel decided not to introduce any of this evidence because he was concerned that an "imperfect alibi"—where neither witness could account for all of Fahnley's time during August of 2008—would undermine the defense.

[¶11] Counsel also did not present credit card billing records that, along with the dates of Fahnley's frequent medical appointments, would have accounted for Fahnley's whereabouts on many of the days during August of 2008. The credit card records would have shown Fahnley's travels to Boston for music and photography and in and around Maine. The records would have shown no trips to the alleged victim's family home in western Massachusetts in mid-August.

[¶12] At the post-conviction hearing, trial counsel testified that he could not remember what changed between the time he wrote the letter and the time of the trial, when he ultimately did not present the evidence discussed in the letter. He testified that he believed that the State's case had been presented as favorably to the defense as he could have expected and that he was concerned

with presenting additional evidence that the State could then use against the defense.

[¶13] Fahnley testified at the post-conviction hearing that he was very involved in the case from the beginning and that he brought all of the above evidence to trial counsel's attention prior to trial. He testified that he expected counsel to introduce the credit card records; that he had wanted all of the witnesses he identified to testify; and that when counsel did not present that evidence, he was "flabbergasted." He would have hired a third attorney had time permitted him to do so.

[¶14] After a thorough discussion of the relevant law, the post-conviction court ultimately found that Fahnley had been deprived of the effective assistance of counsel because trial counsel (1) failed to interview witnesses, which constituted a failure to make a reasonable investigation; (2) failed to present potentially exculpatory evidence, even after counsel notified Fahnley that he would present that evidence; and (3) failed to consult with Fahnley with regard to overarching defense strategy. The court placed significant weight on counsel's "abandon[ment of] the defense he discussed with petitioner, the defense [that] petitioner developed and wanted presented to the jury," without consulting Fahnley. The court found that the defense had been prejudiced

8

because, in sum, the "witnesses and evidence available to support petitioner's defense that neither he nor the victim were where the victim alleged were not offered," and the "witnesses and evidence that provided a motive for the victim and his family to retaliate against petitioner were not offered."

[¶15]  After the court granted Fahnley's petition for post-conviction review and vacated his conviction, the State timely appealed.  *See* 15 M.R.S. § 2131(2) (2017); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.    Standard of Review

[¶16]  We apply "a deferential standard of review to the findings of a post-conviction court," and we "will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it." *Pineo v. State*, 2006 ME 119, ¶ 11, 908 A.2d 632 (quotation marks omitted). "[T]he facts found regarding both the underlying trial and the post-conviction hearing are viewed in the light most favorable to the post-conviction court's judgment." *Philbrook v. State*, 2017 ME 162, ¶ 9, 167 A.3d 1266.  "On review after a hearing in which the court has stated its findings, and there has been no motion for further findings, we will infer that the court found all the facts

necessary to support its judgment if those inferred findings are supportable by evidence in the record." *Id.* (quotation marks omitted).  Thus, in order for the State to prevail, we would have to conclude that the record is devoid of *any* competent evidence to support the court's finding.

B.    Ineffective Assistance of Counsel

[¶17]   Article I, section six of the Maine Constitution and the Sixth Amendment to the United States Constitution establish that defendants in criminal proceedings are entitled to receive the effective assistance of an attorney at trial.  *McGowan v. State*, 2006 ME 16, ¶ 9, 894 A.2d 493.  When confronted with claims of ineffective assistance of counsel, we employ a two-part analysis to determine "(1) whether counsel's representation fell below an objective standard of reasonableness and (2) whether errors of counsel actually had an adverse effect on the defense."  *Fortune v. State*, 2017 ME 61, ¶ 9, 158 A.3d 512 (alteration omitted) (quotation marks omitted) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *Theriault v. State*, 2015 ME 137, ¶¶ 13-14, 125 A.3d 1163).  Together, the two prongs of this case-by-case, fact-driven analysis, *see McGowan*, 2006 ME 16, ¶ 12, 894 A.2d 493, require a "showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable," *Strickland*, 466 U.S. at 687.

[¶18]  "As to the first part of the *Strickland* test, counsel's representation of a defendant falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney."  *Philbrook*, 2017 ME 162, ¶ 7, 167 A.3d 1266 (quotation marks omitted).  "To establish prejudice—the second part of the *Strickland* test—the post-conviction petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, meaning that the ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it."  *Id.* ¶ 8 (quotation marks omitted).

[¶19]  In this case, the court's finding that Fahnley had been deprived of the effective assistance of counsel at trial is supported by an abundance of competent record evidence.  Although the State's argument—that there is evidence in the record to support *some* of the tactical decisions made by defense counsel—may have some merit, that is not the standard that guides our analysis.  Because the court's findings regarding ineffective assistance are supported by competent record evidence—including ample support for its

findings regarding trial counsel's failure to interview witnesses, failure to present exculpatory evidence, and failure to communicate with his client regarding overarching defense strategy—we affirm the judgment.

The entry is:

Judgment affirmed.

---

Andrew S. Robinson, District Attorney, Joshua W. Robbins, Asst. Dist. Atty., and Michael B. Dumas, Asst. Dist. Atty. (orally), Office of the District Attorney, Farmington, for appellant State of Maine

Luke S. Rioux, Esq. (orally), and Valerie A. Randall, Esq., Rioux, Donahue, Chmelecki & Peltier, Portland, for appellee John Fahnley

Franklin County Unified Criminal Docket docket number CR-2016-666
FOR CLERK REFERENCE ONLY