STATE OF MAINE                          UNIFIED CRIMINAL DOCKET
AROOSTOOK, ss                           DOCKET NO. AROCD-CR-21-40597


BRYAN HAMILTON                )
                  Petitioner  )
                              )
                              )
vs                            )         DECISION
                              )
STATE OF MAINE                )
                  Respondent  )


## INTRODUCTION

Pending before the court is Bryan Hamilton's (hereafter "Petitioner") Petition for Post-Conviction Review. Hearing on the petition was held on July 21, 2022. Testimony was received from Attorney Jeremiah McIntosh, and Petitioner. The record also includes, and the court has considered, the docket sheets and file contents of the underlying criminal charge, the transcript of trial proceedings, and the appellate decision at *State v. Hamilton*, Decision No. Mem 20-105, Docket No. Aro-19-485. The Court's pre-hearing order dated April 7, 2022 set the post-hearing briefing schedule in accordance with M.R.Un.Crim.P. 73(c). By letter dated September 9, 2022, Petitioner waived his right to file a post-hearing brief. By submission dated September 9, 2022, the State filed its "Answer to Petitioner's Closing Argument." After consideration of the record presented and the arguments of counsel, the court finds and orders as follows:

## ISSUES IDENTIFIED

By indictment dated November 9, 2018, Petitioner was charged with the following offenses alleged to have occurred on or about the following dates:

1. Unlawful Sexual Contact – Class B, 17-A M.R.S. §255-A(1)(E-1) – September 5, 2018;

1

2. Visual Sexual Aggression Against a Child – Class C, 17-A M.R.S. §256(1)(B) – September 5, 2018;

3. Aggravated Assault – Class B, 17-A M.R.S. §208(1)(C) – September 8, 2018; and

4. Gross Sexual Assault – Class A, 17-A M.R.S. §253(1)(C) – May 6, 2018 to September 5, 2018.

A jury trial was held on June 26, 2019 and June 27, 2019. The jury returned a verdict of guilty on all four counts set forth above. Petitioner was sentenced to 10 years on Count 1, 5 years on Count 2, 6 months on Count 3, and 25 years and a lifetime sex offender registration requirement on Count 4. Petitioner appealed the convictions to the Law Court. The Judgment of the trial court was affirmed in a memorandum of decision. *State v. Hamilton*, Mem 20-105, Aro-19-485. Petitioner filed a petition for post-conviction review dated March 8, 2021 alleging ineffective assistance of counsel and constitutional violations.

## STANDARD OF REVIEW

Claims of ineffective assistance of counsel raised on post-conviction review are governed by the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Applying that test, a petitioner bears the burden, at the post-conviction trial, of proving the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation resulted in prejudice. *Philbrook v. State*, 2017 ME 162, ¶ 6. The second prong of the test is also described as whether errors of counsel actually had an adverse effect on the defense. *Fahnley v. State*, 2018 ME 92, ¶17; *Hodgdon v. State*, 2021 ME 22, ¶11.

As to the first prong of the test, counsel's representation falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney. "Judicial inquiry into the effectiveness of representation is 'highly deferential.' . . . '[A]

2

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Watson v. State*, 2020 ME 51, P20, 230 A.3d 6, 12 (Quoting, *Middleton v. State*, 2015 ME 164, ¶ 13, 129 A.3d 962 (quoting *Strickland*, 466 U.S. at 689)). The court is mindful that trials play out in real time and the post-conviction court "must make every effort to eliminate the distorting effects of hindsight." *Philbrook v. State*, 2017 ME 162, ¶ 6.

In order to prove that counsel's performance was constitutionally deficient,

> "a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective *at the time*." (Internal citations and punctuation omitted.)

*Meggans v. State of Maine*, 2014 ME 125, ¶23, 103 A.3d 1031, 1039 (Emphasis added).

As to the second part of the Strickland test, "to establish prejudice—that counsel's errors had an adverse effect on the defense—a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland*, 466 U.S. at 694; *see Watson*, 2020 ME 51, ¶ 29, 230 A.3d 6." *Hodgdon v. State*, 2021 ME 22, P12, 249 A.3d 132, 136.

The post-conviction review forum also "permits a petitioner who has satisfied the jurisdictional and procedural prerequisites of the statute to obtain relief on the ground that a 'sentence is unlawful or unlawfully imposed.'" *Smith v. State*, 479 A.2d 1309, 1311 (Me. 1984). "'Sentence' means the punishment imposed in a criminal proceeding. . ." *15 M.R.S. § 2121*.

3

## DISCUSSION

Petitioner advances four specific grounds for relief:

1. Lifetime supervised release is unconstitutional. It appears to the court that the Petitioner is contending that the issue of lifetime supervised release should have been determined by the jury.

2. Ineffective assistance of counsel in that counsel failed to object to closing arguments, failed to present test results, and failed to present his interview with the investigative officer;

3. Constitutional violations due to prosecutor's statement in her closing argument that the Petitioner "testified with his feet"; and

4. Constitutional violation due to the denial of a motion for mental evaluation.

The Court will proceed to address the claims set forth in paragraphs 1 and 2. Regarding the claim of prosecutorial misconduct, the Court notes that prosecutor misconduct occurring during the trial is cognizable on direct appeal, not post-conviction review. *See, State v. Wallace*, 691 A.2d 1195, 1997 ME 51; *State v. Ardolino*, 697 A.2d 73, 1997 ME 141. To the extent the Petitioner claims ineffective assistance of counsel with regarding to the defense reaction to the prosecutorial misconduct, the court shall address that issue along with the analysis of the claims set forth in paragraph 2. Otherwise, the Petition as to the allegations set forth in paragraph 3 is denied.

Regarding the Petitioner's contention in paragraph 4 that it was error for the trial court to deny his motion for mental evaluation, this also was cognizable on direct appeal, not post-conviction review. Id; *State v. Gerrier*, 2018 ME 160, P8, 197 A.3d 1083, 1086. Further, there is no deficient conduct on the part of trial counsel as the issue was raised promptly when it came to

4

the attention of trial counsel. The Petitioner has failed to produce any credible evidence or develop any argument related thereto. Therefore, the Petition as to the allegations set forth in paragraph 4 is denied.

## Lifetime Supervision

The Petitioner was charged with, and convicted of, Gross Sexual Assault – Class A. The State was required to prove all of the elements of that offense beyond a reasonable doubt. Proof beyond a reasonable doubt of all of the elements triggers certain sentencing provisions set by the Legislature. Included is the requirement of lifetime supervised release. Title 17-A M.R.S.A. §1231(1-A) requires that the court "impose as part of the sentence a requirement that a defendant convicted of violating section 253, subsection 1, paragraph C be placed on a period of supervised release after imprisonment." *17-A M.R.S.A. §1231(1-A)(2018).* Title 17-A M.R.S.A. §1231(2)(C) states "[t]he authorized period of supervised release is: . . . C. Life for a person sentenced under 1252, subsection 4-E." *Id. at §1231(2)(C)(2018).* Title 17-A M.R.S.A. §1252(4-E) states:

> "If the state pleads and proves that a crime under section 253 was committed against a person who had not yet attained 12 years of age, the court, *notwithstanding subsection 2*, shall impose a term of imprisonment for any term of years. In determining the basic term of imprisonment as the first set in the sentencing process, the court shall select a term of at least 20 years. The court *shall* also impose as part of the sentence a period of supervised release to immediately follow that definite term of imprisonment as mandated by section 1231."

*Id. at 1252(4-E)(2018)(Emphasis added)*(Subsection 2 set the maximum period of imprisonment on a class A at 30 years).

Contrary to the Petitioner's contention, all facts necessary to trigger the aforementioned penalties were submitted to the jury and proved beyond a reasonable doubt. The State established that the Petitioner engaged in a sexual act with another, not his spouse, who had not

in fact attained the age of 12 years. The court finds that the lifetime supervision component of Petitioner's sentence was lawful and lawfully imposed. *See, State v. Cook*, 26 A.3d 834, 2011 ME 94.

## Ineffective Assistance of Counsel

Petitioner's challenges to trial counsels' conduct that he contends fall below an objective standard of reasonableness are: (1) they failed to object to the State's closing arguments, and (2) they failed to present the test results and Petitioner's interview with the investigating officer. The court will address each challenge advanced by the Petitioner in turn.

*Prosecutor's Closing Argument*

As part of the State's closing argument, "the prosecutor twice indicated to the jury that when Hamilton was given an opportunity to talk to a police officer "he testified with his feet." *State v. Hamilton*, Decision No. Mem 20-105, Docket No. Aro-19-485. Neither of the Petitioner's attorneys objected to those statements. The statement was improper. Trial counsel testified at the post-conviction review hearing that he was watching the jurors closely when the statements were made. He detected no reaction or movement of the jurors. To object would have called attention to the statement. This is a statement that trial counsel believed did not resonate with the jury. Trial counsel made a tactical decision not to object to the statement, instead intending to address the issue by way of request for a new trial. As noted with approval by the Law Court, the trial court found that the prosecutor's statements were fleeting, and the trial court properly instructed the jury that statements made by counsel were not evidence. *Id.*

"The deference required of the reviewing court is substantially heightened when the subject of the inquiry is a strategic or tactical decision made by defense counsel." *True v. State*, 457 A.2d 793, 796 (Me. 1983). As it relates to this inaction by defense counsel in failing to

6

object to the prosecutor's statements, the court finds that this was a tactical decision, and the Petitioner has failed to show that defense counsel's performance "fell below an objective standard of reasonableness." The Petitioner has also failed to affirmatively show that the decision regarding the closing argument undermines confidence in the outcome of the case and renders that outcome unreliable. *Theriault v. State*, 2015 ME 137, ¶¶19, 20, 125 A.3d 1163, 1170("...the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome").

### Failure to Present Evidence

Petitioner contends that his attorneys failed to present evidence of the physical examination of the child and the failure rendered their assistance ineffective. The Petitioner has provided a copy of the Spurwink report that includes the following finding:

> "Labia majora and labia minora were normal. On labial separation, hymen was U-shaped, with no breaks. There was no evidence of vaginal discharge or vaginal bleeding. Sulcus was normal. Urethra was normal. Posterior fourchette and fossa narvicularis were normal. Perineum was normal. Anal-rectal area had normal appearance. There was normal rectal sphincter tone. . . Physical examination today reveals no evidence of recent physical abuse or neglect and no evidence of recent genital or rectal trauma. A normal examination neither confirms nor excludes the possibility of abuse." *Ricci, Lawrence, The Spurwink Child Abuse Program – Evaluation 9/13/2018.*

Although not specifically asserted by the Petitioner, the court will assume for purposes of analysis that Dr. Ricci would have testified consistent with his evaluation of September 13, 2018. The court notes the fact that the evidence that the child was subjected to an examination was elicited by defense counsel through multiple witnesses. *See, Trial Transcript, Volume I, Pages 65-66; Volume II, Pages 32-33.* The State's case did not include any expert medical testimony regarding the victim. Therefore, this is not a case where the Petitioner is contending the defense

7

failed to counter the State's expert testimony with expert testimony of its own. Dr. Ricci's report reflects what could be characterized as a normal examination. As noted, it "neither confirms nor excludes the possibility of abuse." *Id.* The evidence reflected, and defense counsel argued to the jury, that an examination was conducted, and the allegations were not corroborated by any evidence, other than the testimony of the child. *See, Trial Transcript, Volume II, Pages 117 – 119.*

The Petitioner argued at hearing that evidence of lack of trauma and evidence of an intact hymen should have been provided to the jury and would have raised reasonable doubt as to his guilt. As pointed out by defense counsel at trial, the child's statements as to the manner in which the sexual contact or sexual acts were perpetrated varied. Depending on which version the jury found more credible, trauma or injury may or may not have been a result from such conduct. Further, the Petitioner has failed to show that the testimony of Dr. Ricci in this regard would have supported his contention. *See e.g., Cheetham v. State,* 2019 MT 290, P1, 398 Mont. 131, 132, 454 P.3d 673, 674, 2019 Mont. LEXIS 1211, *1, 2019 WL 6877905 (Defendant was not entitled to postconviction relief based on ineffective assistance of trial counsel because counsel reasonably concluded, after consulting with colleagues, that a medical report stating a victim's hymen was intact was not exculpatory, especially when the report's author stated the hymen's narrowing was suspicious of a previous injury); *Mazique v. Robinson,* 2017 U.S. Dist. LEXIS 213223, *39(Here, even if, as petitioner alleges, the medical records showed that the victim's hymen was intact, that would be wholly irrelevant. Penetration is not a necessary element of either offense of which petitioner was convicted, and it was never alleged at trial that petitioner had penetrated the victim. Therefore, evidence showing that the victim's hymen was intact was neither exculpatory nor useful for impeachment purposes); *State v. Ware,* 80 So. 3d

8

593, 597, 2011 La. App. LEXIS 1406, *7-8, 11-337 (La.App. 3 Cir. 11/23/11)(Despite testimony that the victim's hymen was intact six months after the incident, this testimony does not disprove "penetration."); *Cobbs v. Cartledge*, 2016 U.S. Dist. LEXIS 198171, *31-32, 2016 WL 9019648(Although Petitioner speculates that if his counsel would have raised the issue of the hymen, that would have affected the outcome of the case, his conclusory and self-serving claims are insufficient to show his counsel was ineffective); *Davis v. Wenerowicz*, 2016 U.S. Dist. LEXIS 80726, *26(Petitioner's contention that an "intact" hymen necessarily establishes that no vaginal intercourse occurred is simply not borne out by contemporary medical science even if Petitioner's asserted "common sense" is to the contrary. The evidence Petitioner wanted to be admitted by his counsel was evidence that was simply equivocal).

Petitioner has failed to present any evidence to support the inferences or conclusions he contends the jury should have reached if they had received testimony regarding the examination. Injecting medical evidence into the trial that neither confirmed nor dispelled the allegations would have served little purpose. There was no medical evidence presented by the State for the defense to counter. The Petitioner has failed to produce sufficient credible evidence for the court to find that counsels' representation fell below an objective standard of reasonableness related to Dr. Ricci's proffered testimony. Further, the Petitioner has failed to show that the decision regarding the lack of such testimony undermines confidence in the outcome of the case and renders that outcome unreliable. *Theriault v. State*, 2015 ME 137, ¶¶19, 20, 125 A.3d 1163, 1170.

Based upon the foregoing, Petitioner Bryan Hamilton's petition for post-conviction relief is DENIED.

Dated: __10/10__, 2022

_____
Justice, Superior Court

9